UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSE OLEA SANCHEZ,<br><br>                Petitioner(s),<br><br>   v.<br><br>PAMELA BONDI, et al.,<br><br>                Respondent(s). | CASE NO. C25-2573-KKE<br><br>ORDER ON HABEAS PETITION |

Petitioner Jose Olea Sanchez is a citizen and national of Cuba detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Olea Sanchez was ordered removed on August 23, 2019, and was taken into custody U.S. Immigration and Customs Enforcement ("ICE") for approximately 90 days before being released on an order of supervision ("OSUP") because Cuba refused to repatriate him. He was detained again on November 26, 2024, and was subsequently released on December 24, 2024. Olea Sanchez was detained by ICE for a third time on March 13, 2025, and has remained in ICE custody since then. Having been detained for over thirteen months since his order of removal became final, Olea Sanchez now seeks relief from this Court to: (1) order his release from immigration detention, (2) prevent his re-detention without a hearing, (3) prevent removal to a third country "without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings", and (4)

ORDER ON HABEAS PETITION - 1

bar removal to an unknown third country. For the reasons stated below, the Court will grant Olea Sanchez's habeas petition in part.

## I. BACKGROUND

Petitioner Olea Sanchez is a Cuban citizen and national who reports having no available travel documents, such as a passport, on hand. Dkt. No. 2 at 6; Dkt. No. 11 ¶ 4; Dkt. No. 12-1 at 2. On August 15, 2015, Olea Sanchez applied for admission into the United States at the Laredo, Texas port of entry. Dkt. No. 11 ¶ 4; Dkt. No. 12-1 at 3. Petitioner was initially paroled into the United States and permitted to pursue an adjustment of his status under the Cuban Adjustment Act. Dkt. No. 11 ¶ 4. Though he obtained a work permit and a social security card, there is no record of Olea Sanchez applying for permanent resident status in the United States. Dkt. No. 2 at 6. Olea Sanchez has a criminal history in the United States, which includes seven arrests and convictions between 2019 and 2024 for shoplifting, larceny, and unspecified "public order" and drug offenses. Dkt. No. 12-1 at 3.

On July 23, 2019, the Department of Homeland Security served Olea Sanchez with a Notice to Appear and initiated removal proceedings. Dkt. No. 11 ¶ 6; Dkt. No. 12-2 at 2–4. On August 23, 2019, an immigration judge ordered Olea Sanchez removed to Cuba. Dkt. No. 12-1 at 3; Dkt. No. 12-3 at 2–3. On September 12, 2019, Olea Sanchez was released pursuant to an Order of Supervision ("OSUP") following a determination that there was no significant likelihood of removal to Cuba in the reasonably foreseeable future. Dkt. No. 11 ¶ 6. On November 26, 2024, Olea Sanchez was re-detained by ICE. Dkt. No. 11 ¶ 7. On December 19, 2024, Olea Sanchez was released on an OSUP after another determination that there was no significant likelihood of removal to Cuba in the reasonably foreseeable future. *Id.*

On March 13, 2025, after an "encounter[]" with ICE, Olea Sanchez was re-detained, though no basis for the revocation of his OSUP or re-detention has been provided to the Court. *Id.* ¶ 8. Olea Sanchez has remained in ICE custody since then. Dkt. No. 2 at 3.

In a declaration in support of Respondents' return memorandum, Deportation Officer Delano R. Dumo avers that on May 7, 2025, ICE Enforcement and Removal Operations ("ERO") learned that there was still no significant likelihood of removal to Cuba in the reasonably foreseeable future. Dkt. No. 11 ¶ 9. Officer Dumo further states that on June 25, 2025, ICE ERO served Olea Sanchez with a notice of intent to remove him to a third country, Mexico, pursuant to 8 U.S.C. § 1231(b)(2), and Olea Sanchez refused to sign the notice. *Id.* Officer Dumo states that Olea Sanchez was given another notice of removal to Mexico on December 18, 2025, and that he again refused to sign the notice. *Id.* Although Officer Dumo provides no updates as to whether there is any change as to the likelihood of removal to Cuba, he nevertheless asserts that such removal "is actively being pursued." *Id.* ¶ 10. At the same time, he avers that "[r]emoval to Mexico is also being actively pursued and has not been executed at this time because [Olea Sanchez] has been diagnosed with a serious mental disorder," which triggers "ICE Directive 11063.2." *Id.* Officer Dumo does not provide the Court with any details about ICE's directive on serious mental disorders, apart from indicating that the directive has prevented Olea Sanchez's removal to Mexico. *See id.*

On December 15, 2025, Olea Sanchez filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his immigration detention as violating the INA, the Due Process Clause, the Administrative Procedure Act ("APA"), and other legal protections. He asserts the following grounds for relief: (1) that his re-detention violates the Due Process Clause because there is no significant likelihood he will be removed in the reasonably foreseeable future, (2) that ICE violated due process by re-detaining him without a hearing, (3) that Respondents failed to comply

ORDER ON HABEAS PETITION - 3

with 8 C.F.R. § 241.13, (4) that his "re-arrest and detention" "was punitive to the extent that he was given no reasons for being detained indefinitely", (5) that Respondents' third-country removal policy violates the Due Process Clause, the Convention Against Torture ("CAT"), federal regulations, and the APA, and (6) that Respondents' third-country removal policy is punitive and violates both the Fifth and Eighth Amendments. Dkt. No. 2 at 25–30. In his petition, Olea Sanchez also indicates that he is unwilling to go to Mexico or any third country. Dkt. No. 2 at 7. To date, Olea Sanchez has been detained for more than thirteen months since his removal order.

## II. ANALYSIS

**A.     Legal Standard**

1. Habeas petition

To succeed on a habeas petition, a petitioner must show he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

2. Detention of noncitizens who are ordered removed

Detention of noncitizens following an order of removal is governed by the INA. "When [a noncitizen] has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the [noncitizen's] removal during a subsequent 90-day statutory 'removal period,' during which time the [noncitizen] normally is held in custody." *Zadvydas*, 533 U.S. at 682. During the 90-day removal period, the Government "shall detain" the noncitizen. 8 U.S.C. § 1231(a)(2)(A). Once the 90-day removal period ends, the

Government may continue to detain certain noncitizens. *Id.* § 1231(a)(6). "[A noncitizen] ordered removed who is inadmissible …, removable[,] … or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period[.]" *Id.*

Federal regulations govern the re-detention and revocation of supervised release of a noncitizen with a final order of removal. 8 C.F.R. § 241.13(a). Under 8 C.F.R. § 241.13(i), ICE may revoke a noncitizen's release if (1) if they violate the conditions of their release or (2) if, "on account of changed circumstances," ICE determines there is a significant likelihood the noncitizen will be removed in the reasonably foreseeable future.

However, the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. *Zadvydas*, 533 U.S. at 699. "A statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] … [t]he Fifth Amendment's Due Process Clause." *Id.* at 690. Thus, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

In challenging detention through a habeas petition, the petitioner bears the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Once that showing is made, the Government "must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to meet its burden, then the noncitizen must be released from detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

ORDER ON HABEAS PETITION - 5

**B.      Olea Sanchez's prolonged detention is unlawful.**

Olea Sanchez is entitled to the protections of the Due Process Clause. *Zadvydas*, 533 U.S. at 693. Having been detained for over six months, Olea Sanchez's detention is not "presumptively reasonable." *Id.* at 701. Through his petition and reply, Olea Sanchez has provided evidence showing that Respondents have made no progress towards obtaining a travel document either to Cuba or Mexico despite detaining him for over thirteen months following his order of removal (Dkt. No. 11 ¶¶ 8–10 (Officer Dumo generally stating that ICE is actively pursuing removal to both Cuba and Mexico, but providing no updates as to any progress made in that pursuit)), that Respondents have been unable to effectuate his removal for over six years since he was ordered removed (Dkt. No. 11 ¶¶ 6–10; Dkt. No. 13 at 3), and that the Government has found on three separate occasions (most recently in May 2025) that it is was not significantly likely that he could be removed to Cuba in the reasonably foreseeable future (Dkt. No. 11 ¶¶ 6, 7, 9; Dkt. No. 2 at 6–9). Olea Sanchez additionally asserts that Cuba will likely not repatriate him due to his criminal record. Dkt. No. 2 at 7–8 (ICE ERO statistics showing that, in fiscal year 2025, of 419 Cuban citizens who were detained by ICE, only 138 were removed, and of those successful removals, only 32 were listed as having any criminal convictions); *see* Dkt. Nos. 2-1, 2-2 (records of Olea Sanchez's criminal history).

As to removal to Mexico, Olea Sanchez provides evidence that "Mexico's acceptance [of him] may be contingent on [his] consent," which he is unwilling to provide. *Arenado-Borges v. Bondi*, 2:25-CV-02193-JNW, 2025 WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025); *see* Dkt. No. 2-3 ¶¶ 11–12. Martin Parsons, a deportation officer in the ICE ERO San Diego Field Office, attests that in *Rios v. Noem*, No. 25-cv-2866-JES-VET (S.D. Cal. 2025), Mexico conditioned the acceptance of a Cuban national ordered removed on his willingness to be removed there. Dkt. No.

ORDER ON HABEAS PETITION - 6

2-3 ¶ 11.[1]  Such evidence casts doubt on Respondents' ability to remove Olea Sanchez to Mexico in the reasonably foreseeable future.  *See Arenado-Borges*, 2025 WL 3687518, at *4 (finding the same as to petitioner, a Cuban national, who was unwilling to be removed to Mexico).  Moreover, Officer Dumo indicates that Petitioner's diagnosis with a serious mental disorder precludes his removal to Mexico.  Dkt. No. 11 ¶ 10.  Finally, prior to removing a noncitizen to a third country, the Government must first conduct a reasonable fear interview, and Officer Dumo does not indicate that he, or anyone else, has taken steps to schedule or conduct that interview.  Dkt. No. 13 at 4–5.

Accordingly, Olea Sanchez "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," and the burden shifts to the government to "respond with evidence sufficient to rebut that showing."  *Zadvydas*, 533 U.S. at 701.

Respondents neither make affirmative legal arguments supporting Petitioner's continued detention, nor respond to Olea Sanchez's arguments on his *Zadvydas* claim, offering only Officer Dumo's declaration in support of their response.  *See* Dkt. No. 10.  Though Officer Dumo makes generalized assertions that ICE is actively pursuing removal to both Cuba and Mexico, he provides no particularized evidence that supports a significant likelihood of removal to either country in the reasonably foreseeable future.  *See generally* Dkt. No. 11.  Officer Dumo, for instance, does not specify what additional steps may be required to remove Olea Sanchez to Mexico in light of his serious mental disorder.  Nor does he counter Olea Sanchez's evidence showing that Mexico could refuse to accept him.  Such representations are insufficient to rebut Olea Sanchez's showing.

Olea Sanchez has now been detained for over thirteen months, and neither Cuba nor Mexico has issued travel documents necessary to effectuate his removal.  "ICE is not permitted to

---

[1] Officer Parsons' declaration was originally filed in *Rios v. Noem*, 25-cv-2866-JES-VET (S.D. Cal. 2025) and is offered by Olea Sanchez here.

ORDER ON HABEAS PETITION - 7

hold [Olea Sanchez] indefinitely while it waits for travel documents[.]" *Tran v. Bondi*, C25-01897-JLR, 2025 WL 3140462, at *3 (W.D. Wash. Nov. 10, 2025). The Court will therefore grant Olea Sanchez's habeas petition and order his immediate release, subject to the conditions of his prior OSUP.

C. **Membership in the *D.V.D.* class does not preclude Olea Sanchez from asserting his third country-removal claims.**

The Government argues that the Court "should decline to exercise jurisdiction over Petitioner's third country removal claim as a matter of comity" because he is a member of the certified plaintiff class in *D.V.D v. Department of Homeland Security*, Civ. A. No. 25-10676 (D. Mass.). Dkt. No. 10 at 9–10. For support, it relies on *Pride v. Correa*, in which the Ninth Circuit held that, when "the complainant is a member in a class action seeking the same relief[,]" a court "may dismiss those portions of the complaint which duplicate the class action's allegations and prayer for relief." 719 F.3d 1130, 1133 (9th Cir. 2013) (citation modified) (quoting *Crawford v. Bell*, 599 F.2d 890, 892–93 (9th Cir. 1979)). But the Ninth Circuit went on to explain that "a district court may not 'dismiss[] those allegations … which go beyond the allegations and relief prayed for in [the class action]." *Id.* (first and last alterations in original) (quoting *Crawford*, 599 F.2d at 893). Here, dismissal would be inappropriate because Olea Sanchez's individual claims seek relief he is unable or unlikely to obtain in the *D.V.D.* litigation.

Olea Sanchez's due process claim is not identical to the claims in the *D.V.D.* class action because he seeks a meaningful opportunity to seek withholding of removal in the event he fears persecution in a designated third country—a claim not at issue in *D.V.D. See Nguyen v. Scott*, 796 F. Supp. 3d 703, 729 (W.D. Wash. 2025); *see also Kumar v. Wamsley*, No. C25-2055-KKE, 2025 WL 3204724, at *7 (W.D. Wash. Nov. 17, 2025); *see also Arenado-Borges*, 2025 WL 3687518, at *6.

And as the Government acknowledges, dismissal of individual claims that duplicate a class action is not required, rather, it is "within the court's discretion" and grounded in "its inherent power to control its own docket." Dkt. No. 10 at 10 (citing *Crawford*, 599 F.2d at 893). As the Ninth Circuit explained in *Crawford*, "[a] court *may choose* not to exercise its jurisdiction when another court having jurisdiction over the same matter has entertained it and can achieve the same result." 599 F.2d at 893. Here, ample authority supports the Court's exercise of jurisdiction over Olea Sanchez's third-country removal claims.

Finally, the Government contends that Olea Sanchez's petition should be dismissed because "[t]he Supreme Court's stay of the preliminary injunction" in *D.V.D.* is "precedent and … binding" on Olea Sanchez as a member of the *D.V.D.* class. Dkt. No. 10 at 9. For the reasons thoroughly explained in *Nguyen*, the Court disagrees. *See* 796 F. Supp. 3d at 730–33; *see also Kumar*, 2025 WL 3204724, at *8 (adopting *Nguyen*'s reasoning); *Arenado-Borges*, 2025 WL 3687518, at *6 (same).

In sum, Olea Sanchez's membership in the *D.V.D.* class does not prevent the Court from adjudicating his claims for individual relief in this habeas action.

D.   **Olea Sanchez's Requests for Injunctive Relief**

Olea Sanchez also seeks prospective injunctive relief adjacent to his habeas petition seeking protection in the event the Government attempts to remove him to a third country, or in the event that the Government re-detains him. Dkt. No. 2 at 12–21. Specifically, he requests an order enjoining Respondents from removing him to a third country without notice and a meaningful opportunity to respond, or from re-detaining him without first holding a hearing before a neutral decisionmaker. *Id.* at 26.

Because he invoked its habeas and federal question jurisdiction, the Court could provide equitable relief on those claims if Olea Sanchez met the standard for a permanent injunction. *See*

ORDER ON HABEAS PETITION - 9

Dkt. No. 1 at 3; *see Roman v. Wolf*, 977 F.3d 935, 941–42 (9th Cir. 2020). Indeed, this Court and many others have ruled that Respondents' third-country removal policy does not comport with due process and have ordered similar relief. *See e.g.*, *Kumar v. Wamsley*, C25-2055-KKE, 2025 WL 3204724, at *9 (W.D. Wash. Nov. 17, 2025); *Baltodano v. Bondi*, C25- 1958RSL, 2025 WL 3484769, at *2 (W.D. Wash. Dec. 4, 2025); *Nguyen v. Bondi*, 2:25-CV-02024-TL, 2025 WL 3534168, at *7–10 (W.D. Wash. Dec. 10, 2025); *A.A.M. v. Andrews*, 1:25-CV-01514-DC-DMC (HC), 2025 WL 3685159, at *4–7 (E.D. Cal. Dec. 19, 2025).

1. <u>Respondents must comply with federal regulations on re-detention of noncitizens subject to an OSUP.</u>

Olea Sanchez asserts that he is constitutionally entitled to a hearing in advance of any re-detention. Dkt. No. 2 at 12–15 (collecting cases); Dkt. No. 13 at 8. Respondents do not address this argument. Nor do Respondents address the applicable regulatory requirements for re-detention. To the extent that Olea Sanchez requests notice and a meaningful opportunity to be heard before he can be re-detained, the Court will grant this relief.

The re-detention of a noncitizen subject to a final order of removal is governed by 8 C.F.R. § 241.13. The regulation was "intended to 'provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release[.]'" *Constantinovici v. Bondi*, --- F. Supp. 3d ---, 2025 WL 2898985, at *5 (S.D. Cal. Oct. 10, 2025) (quoting *Santamaria Orellana v. Baker*, CV 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025)). The regulation states, in part, that "[t]he Service may revoke [a noncitizen's] release under this section and return the [noncitizen] to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13. The regulation also provides that, "[u]pon revocation [of an OSUP], the [noncitizen] will be notified

ORDER ON HABEAS PETITION - 10

of the reasons for revocation of his or her release," and that there will be "an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3).

Here, Respondents do not aver that Petitioner was provided notice or the informal interview process, nor do they identify what "changed circumstances" warranted Petitioner's re-detention. *See* Dkt. No. 11 ¶ 8; Dkt. No. 10 at 9.

Accordingly, in the event they seek to re-detain Olea Sanchez in the future, Respondents must provide notice and an opportunity to respond that comports with 8 C.F.R. § 241.13(i).

2. <u>Olea Sanchez's request to enjoin third-country removal is denied without prejudice.</u>

Olea Sanchez argues that ICE's third-country removal policy is punitive such that it violates his Fifth and Eighth Amendment rights and seeks to enjoin the Government from removing him to any third country on that basis. Dkt. No. 2 at 4. Respondents argue that Olea Sanchez's request to enjoin third-country removal is speculative and premature, as ICE seeks only to remove Olea Sanchez to Cuba or Mexico, and he "does not allege what harm he personally faces if removed to Mexico, or any circumstances that would make removal to Mexico punitive in his case." Dkt. No. 10 at 11. The Court agrees with Respondents that, on this record, Olea Sanchez has not demonstrated a likelihood of irreparable injury that would entitle him to permanent injunctive relief in the form of an order prohibiting Respondents from removing Olea Sanchez to "any third country." *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (discussing standard for permanent injunctive relief); *cf. Kumar*, 2025 WL 3204724, at *9 (enjoining third-country removal where petitioner was issued a notice that ICE intended to remove him to a third country where he would likely face persecution). Olea Sanchez provides no facts specific to his circumstances that support enjoining Respondents from removing him to "any third country," such

as identifying a target third country where he might suffer persecution or torture. Though he indicates he is unwilling to be removed to Mexico, he has not stated a fear of persecution or torture there. Courts that have enjoined a Petitioner's third-country removal have made findings that "were specific to a particular population and particular destination countries." *Arenado-Borges*, 2025 WL 3687518, at *7 (denying petitioner's request for an order prohibiting third-country removal as unconstitutionally punitive where petitioner, a Cuban national, provided no evidence that he would face punishment on arrival in Mexico); *see also Elshourbagy v. Bondi*, 2:25-CV-02432-TL, 2025 WL 3718993, at *9–10 (W.D. Wash. Dec. 23, 2025). The record does not contain adequate information for this Court to make such findings here.

    3. <u>Olea Sanchez is entitled to notice and a meaningful opportunity to be heard before any attempted third-country removal.</u>

Where the Government cannot remove a noncitizen to the country specified in their removal order, it may attempt to remove that person to a third country, but in doing so, it must comply both with the INA, 8 U.S.C. § 1231(b), and the Due Process Clause. *Aden*, 409 F. Supp. 3d at 1019; *Kumar*, 2025 WL 3204724, at *2 (explaining such designations "are subject to the same mandatory protections that exist in removal proceedings."). To comply with due process, the Government must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third country. *Id.* The INA prohibits ICE from removing a noncitizen to any country where their "life or freedom would be threatened … because of [their] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The Government must "make a determination regarding a noncitizen's claim of fear before deporting him." *Aden*, 409 F. Supp. 3d at 1010; 8 U.S.C. § 1231(b)(3)(A). Multiple courts in this district have held that, if a noncitizen claims fear of removal to a designated third country, the Government must allow them to pursue

ORDER ON HABEAS PETITION - 12

withholding of removal through reopened removal proceedings before an immigration judge. *Aden*, 409 F. Supp. 3d at 1011; *Baltodano*, 2025 WL 2987766, at *3–4; *Nguyen*, 796 F. Supp. 3d at 739.

Against this legal backdrop, Olea Sanchez requests an order requiring notice of any third-country removal and the opportunity to respond and contest that removal if he has a fear of persecution or torture in that country in reopened removal proceedings. Dkt. No. 2 at 28. In support, Olea Sanchez cites a July 9, 2025 ICE policy memo, which allows for deportation of individuals to third countries "without any procedures for notice or an opportunity to be heard." Dkt. No. 2 at 23. Respondents neither rebut Olea Sanchez's arguments as to notice, nor his request for reopened removal proceedings. *See* Dkt. No. 10 at 11–12 (addressing only Olea Sanchez's argument that the Court should enjoin third-country removal under the Government's punitive removal policy).

The Court finds the reasoning in *Aden* to be persuasive, and that the procedures set forth in the ICE policy memo fall well short of what the *Aden* court and others in this district have held that due process, and the INA, require. Thus, the Court will grant Olea Sanchez's request for relief. Should Respondents take steps to remove Olea Sanchez to a country other than Cuba, they must provide Olea Sanchez with written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3). *Nguyen,* 796 F. Supp. 3d at 727. ("'[B]oth the due process clause and the governing statute place the burden on the government—regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims.' This cannot be satisfied by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal proceedings must be reopened so that a hearing can be held.") (quoting *Aden*, 409 F.Supp.3d at 1010–1011)).

ORDER ON HABEAS PETITION - 13

### III.  CONCLUSION

The Court GRANTS Olea Sanchez's habeas petition.  Dkt. No. 2.

1. Respondents are ORDERED to immediately release Olea Sanchez from custody under the conditions of his most recent order of supervision and not to re-detain him without compliance with 8 C.F.R. § 241.13(i) and 8 U.S.C. § 1231.

2. It is further ORDERED that if Respondents take steps to remove Olea Sanchez to a country other than Cuba, they must provide Olea Sanchez with written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3).

3. Within **FORTY-EIGHT (48)** hours of this order, Respondents must provide the Court with a declaration confirming that Olea Sanchez has been released from custody.

Dated this 21st day of January, 2026.

*Kymberly K. Evanson*
Kymberly K. Evanson
United States District Judge